UNITED STATES v. BUNCH.

(District Court, E. D. Arkansas. December 14, 1908.)

No. 2,879.

1. CARRIERS (§ 38*)—ILLEGAL CONCESSIONS—CONSTRUCTION OF STATUTE.
    Section 1 of Elkins Act Feb. 19, 1903, c. 708, 32 Stat. 847 (U. S. Comp. St. Supp. 1907, p. 880), in providing that "it shall be unlawful for any person, persons or corporation to offer, grant, or give, or to solicit, accept, or receive any rebate, concession, or discrimination in respect to the transportation of any property in interstate or foreign commerce," etc., describes three separate and distinct correlative offenses on the part each of carrier and shipper, to wit: (1) The offering or soliciting of a rebate, concession, or discrimination; (2) the granting or accepting of a rebate, concession, or discrimination; and (3) the giving or receiving of a rebate, concession, or discrimination.
    [Ed. Note.—For other cases, see Carriers, Cent. Dig. § 96; Dec. Dig. § 38.*]

2. CARRIERS (§ 38*)—OFFENSES BY SHIPPER—RECEIVING REBATES—ELEMENTS OF OFFENSE.
    To warrant a conviction of a shipper for receiving rebates in violation of section 1 of Elkins Act Feb. 19, 1903, c. 708, 32 Stat. 847 (U. S. Comp. St. Supp. 1907, p. 880), the fact of the payment of such rebate by or on behalf of the carrier, and its receipt by or on behalf of defendant, must

be proved, and each payment constitutes but one offense, although it may cover more than one shipment.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 96; Dec. Dig. § 38.*]

## On Plea of Guilty.

Defendant was indicted for violation of the act of Congress approved February 19, 1903 (chapter 708, § 1, 32 Stat. 847 [U. S. Comp. St. Supp. 1907, p. 880]), generally known as the "Elkins act." The indictment contains 58 counts, each of the counts charging that the defendant, a shipper, "did then and there, knowingly, willfully, and unlawfully accept and receive from certain railroad companies, common carriers engaged in interstate commerce, a rebate on a shipment made in a certain car," each count describing the car in which the shipment was made, the place whence shipped, as well as the place of destination, the published rate which was paid by the defendant, and the sum of money repaid to him as a rebate on each car. The defendant entered a special plea of guilty to counts 1, 12, 14, 15, 20, 21, 24, 25, 26 and 31, which plea is as follows:

"The defendant Tilghman H. Bunch for his special plea of guilty to counts 1, 12, 14, 15, 20, 21, 24, 25, 26, and 31, contained in said indictment, says that he is guilty as charged in counts 12, 14, 15, and 20; that each of said counts represents a separate shipment made on different dates; that the rebate, paid to defendant as alleged in the indictment represented by each of said four counts was made in one settlement, based upon one application and paid in one check, constituting one settlement in payment for four separate shipments, and, defendant claims, under the law, constituting but one offense: that he is guilty as charged in counts 21, 24, 25, 26, and 31; that each of said counts represents a separate shipment made on different dates from different places; that the rebate paid to defendant as alleged in the indictment represented by each of said five counts was made in one settlement, based upon one application and paid in one check, constituting one settlement in payment for five separate shipments, and, defendant claims, under the law, constituting but one offense."

The government accepted this plea, in writing, which is as follows:

"Comes the United States and accepts the defendant's plea of guilty on the aforesaid counts, and says that the facts stated in said special plea as to the number of shipments and the payment in settlement made by said Bunch in said count is true, but the government denies that said counts 12, 14, 15, and 20 constitute but one offense. As to counts 21, 24, 25, 26, and 31, the United States also concedes that the facts stated in regard to shipments and settlement in payment are true, but it maintains and avers that each one of said counts constitutes a separate and distinct offense."

As to the other 48 counts of the indictment, the government entered a nol. pros.

This leaves, as the sole question to be determined by the court, whether under this indictment, which charges only the receipt of a rebate by the defendant when there were a number of shipments, but only one payment, in one draft, the government may split that one payment into as many offenses as there were separate transactions of carriage.

Wm. G. Whipple, U. S. Atty., Powell Clayton, Asst. U. S. Atty., and Edwin P. Grosvenor, Special Asst. U. S. Atty.

Moore, Smith & Moore, for defendant.

TRIEBER, District Judge (after stating the facts as above). The part of the Elkins act, under which this indictment is drawn, is as follows:

"And it shall be unlawful for any person, persons or corporation to offer, grant or give, or to solicit, accept or receive, any rebate, concession or dis-

---

crimination in respect to the transportation of any property in interstate or foreign commerce by any common carrier subject to the said act to regulate commerce and the acts amendatory thereto, whereby any such property shall by any device whatever, be transported at a less rate than that named in the tariffs published and filed by such carrier as is required by said act to regulate commerce and the acts amendatory thereto, or whereby any other advantage is given or discrimination practiced. Every person or corporation who shall offer, grant, or give, solicit, accept or receive any such rebates, concessions or discriminations shall be deemed guilty of a misdemeanor," etc.

In the opinion of the court this act, in so far as it applies to the shipper, creates three distinct offenses: First, the soliciting of a rebate, concession, or discrimination in respect of the transportation of property in interstate or foreign commerce; second, the acceptance of any such rebate, concession, or discrimination; third, the receipt of such rebate, concession, or discrimination.

For a shipper to ask for a concession or rebate, although it may not be granted by the carrier, constitutes the offense of soliciting. The object of this part of the act clearly was to put a stop to the evil of shippers soliciting favors which would give them a concession, and thereby discriminate in their favor as against other shippers. Large shippers of freight, presuming on that fact, would approach freight agents or other officers of the carrier asking for concessions in rates, sometimes by direct, and at other times indirect, methods, whereby there would be discrimination in their favor as against other shippers, and threaten the withdrawal of their business if refused. In many instances carriers yielded to these solicitations rather than take the chance of losing valuable business. This is what is meant by soliciting rebates and concessions which the statute seeks to forbid.

The prohibition to accept was intended to cure another evil. Freight agents, anxious to secure business for their road, and at the same time build up reputations for themselves as men able to secure large shipments, would offer concessions to large shippers, sometimes agreeing to pay the rebates or concessions out of their own salaries or commissions. Congress, in order to prevent such discriminations, which could only benefit the large shippers—for the business of the small shipper was not sufficient to justify such offers—not only made it an offense for the carrier to offer them, but also made it an offense for their employés to make the offer and the shipper to accept them. In order to make the prohibition more effective and prevent the carrier from enjoying the fruits of these acts by disclaiming all knowledge of the unlawful acts of its agents, who, it might be claimed, paid such rebates out of their own salaries, and, no doubt, also for the purpose of removing any doubt as to the construction to be placed on the statute, Congress, in the act, provided for the construction of this part of the act by inserting the following provision:

"In construing and enforcing the provisions of this section the act, omission or failure of any officer, agent or other person acting for, or employed by, any common carrier, acting within the scope of his employment, shall in every case be also deemed to be the act, omission or failure of such carrier, as well as that of the person."

To warrant a conviction on a charge of accepting a rebate, concession, or discrimination, it is unnecessary to charge or prove the pay-

ment or receipt thereof. As I construe that part of the act, it is sufficient if it is shown that the concession was offered by the carrier, or his agent, and by the shipper accepted. The fact that the carrier, after the offer had been made by it and accepted by the shipper, refused to make payment of the rebates, would not prevent a conviction under an indictment charging the shipper with the acceptance of such an offer, the acceptance of the offer being the gist of the offense.

The third offense is that of receiving a rebate or concession. Under this provision it is wholly immaterial whether the rebate was paid in pursuance of a former agreement or without such understanding. The offense is completed when the shipper receives a rebate or concession from the published rates. In Standard Oil Company v. United States (C. C. A.) 164 Fed. 376, the Circuit Court of Appeals for the Seventh Circuit, upon an indictment which charged the defendant with "accepting and receiving a concession," the court held that until the consummation of the agreement there is no offense. The high regard and deference which the opinions of the learned judges of that court command have invoked a careful and deliberate consideration of the reasons they give for their views, but if these reasons are not convincing their conclusions are not conclusive on this court. Judge Grosscup, who delivered the opinion of the court, in the course of it, in so far as it is applicable to the second proposition hereinbefore stated, said:

"Manifestly, the offense of accepting a rebate is not committed until the shipper has taken part of the freight money whereby his property has been transported at less than the lawful rate. Proof that he agreed to accept a return of a part of the full rate, stopping there, would not support an indictment for accepting a rebate. Such agreement is not binding, and at any time before its complete fulfillment the shipper may repent and insist upon the carrier's keeping the whole amount. The concession differs from the rebate only in this: that in the concession the shipper, instead of paying the full rate and receiving back part, merely settles for the difference. The result is the same—the property is transported for the same net amount less than the lawful rate. And there is no basis in the statute for holding that in the case of accepting a concession the transaction is consummated, and the door of repentance is closed, at any earlier moment than in the case of accepting a rebate. So proof that a shipper has agreed to accept a concession—stopping there—whether the proof be embodied in waybills, or by the entries, or formal contracts, will not support an indictment for accepting a concession until the intended wrong becomes an accomplished fact."

Judge Baker, in his concurring opinion in that case, said on that point:

"Does any ambiguity arise because the words 'to give' and 'to receive' are also used?' 'To offer' and 'to solicit' characterize the inchoate act. The completed act that is condemned is for the carrier 'to grant or give' and the shipper 'to accept or receive.' Ordinary and accepted meanings of 'give' and 'receive' are synonymous with those of 'grant' and 'accept.' As all those words appear in the same phrase of the same sentence, the principle of ejusdem generis forbids their being taken to indicate acts of antagonistic quality."

If this is a correct construction of the act, then the words "offer," "grant," and "solicit" are superfluous, and are not to be considered in the enforcement of this statute. Such an interpretation is in violation of the well-settled maxim that "all the words of a law must have effect rather than part should perish by construction." Platt v. Union

Pacific R. R. Co., 99 U. S. 48, 58, 25 L. Ed. 424; Montclair Twp. v. Ramsdell, 107 U. S. 147, 2 Sup. Ct. 391, 27 L. Ed. 431; Knox County v. Morton, 15 C. C. A. 671, 675, 68 Fed. 787, 790; Wrightman v. Boone County, 31 C. C. A. 570, 572, 88 Fed. 435, 437; United States v. Ninety-Nine Diamonds, 72 C. C. A. 9, 139 Fed. 961, 963.

In Platt v. Union Pacific R. R. Co. it was held:

"Congress is not to be presumed to have used words for no purpose. * * * But the admitted rules of statutory construction declare that a Legislature is presumed to have used no superfluous words. Courts are to accord a meaning, if possible, to every word in a statute."

In Armour Packing Company v. United States, 82 C. C. A. 143, 151, 153 Fed. 1, 9, 14 L. R. A. (N. S.) 400, although the indictment was not for the same offense as is charged in this case, Judge Sanborn, who delivered the opinion of the court, said:

"But the fact is noted in passing that the giving or receiving a concession whereby property is transported at a less rate than that established is not the only offense created by this act, but also the giving or receiving any concession whereby any other advantage is given or discrimination practiced."

And the Supreme Court, when reviewing the same case, although declining to pass upon that phase of the act, saying, "We are not now concerned with the construction of the act in making provision for punishing the carrier or shipper for offering, granting or giving, or soliciting, accepting or receiving rebates, concessions, or discriminations irrespective of actual transportation," expressly held that:

"The penal section is not only aimed at offenses whereby property is transported in interstate commerce at lower than published rates, but in terms covers the offering, granting, giving. soliciting, accepting, or receiving of rebates, concessions, or discriminations whereby any other advantage is given or discrimination is practiced in respect of interstate transportation." 20 ) U. S. 56, 74, 28 Sup. Ct. 428, 432, 52 L. Ed. 681.

The counts of this indictment to which pleas of guilty have been entered all charge the defendant with accepting and receiving certain sums of money as rebates; each count specifying the exact amount paid in accordance with the published tariff rates, and the amount thereafter refunded; each count covers one car load of merchandise shipped on a certain day from one place to another. Although these shipments were made at different times, the plea alleges, and the government admits, that the payments of the rebates for the shipments set out in counts 12, 14, 15, and 20, and for the shipments set out in counts 21, 24, 25, 26, and 31, were each made at one time and by one check—that for the shipments in counts 12, 14, 15, and 20 on the 9th day of October, 1905, and on the other counts, 21, 24, 25, 26, and 31, on the 21st day of September, 1905.

As the gravamen of the offense charged in all of the counts is the acceptance and receipt of the money paid as a rebate, and not the acceptance of a concession, there could be no violation of that part of the act until it is shown that the money intended as a rebate was actually paid. If the railroad company had refused to pay the rebate, although it had expressly agreed to do so, the defendant clearly could not have been convicted of receiving a rebate, although he might be guilty of the act of having solicited it or accepted a proposition to have his ship-

ments carried at a concession, and the payment of a rebate to be paid after the carriage of his shipment had been completed and the published tariff charges paid. That the rebate was solicited, or an agreement entered into to accept rebates on shipments when made, are immaterial, for none of these counts charges such violation of the statute. To sustain a conviction for receiving rebates, the fact of the payment by or in behalf of the carrier, and the receipt of it by or for the use and benefit of the defendant, must be established. As there were only two payments to the defendant on these nine counts, and he only received two rebate checks, there were only two offenses committed under the indictment as framed, charging the receiving of rebates.

While the Supreme Court has never directly passed upon this question, yet this conclusion may be deduced from what was said in Armour Packing Co. v. United States, supra. One of the issues in that case was, in what district the prosecution should have been instituted. The statute permitted a prosecution in "any court of the United States having jurisdiction of crimes within the district in which such violation was committed, or through which the transportation may have been conducted." It was contended that the offense could only be tried in the courts of the districts of the termini of the shipment, but this was overruled by the court, the court saying:

"It does not follow from this view of the character of the offense that a single transportation of goods can be made the basis of repeated separate criminal charges in each of the districts through which the transportation at an illegal rate is had. Take the case at bar. The charge is of a single, continuous carriage from Kansas City to New York at a concession from the legal rate for the part of the carriage between the Mississippi river and New York of 12 cents for each 100 pounds so transported. This is a single, continuing offense, not a series of offenses, although it is continuously committed in each district through which the transportation is received at the prohibited rate." 209 U. S. 76, 77, 28 Sup. Ct. 433, 52 L. Ed. 681.

So in the case at bar, each shipment under agreement or promise of rebate might probably be treated as a separate offense, and prosecuted as such under that provision of the act which prohibits the acceptance of a concession or rebate. But when the pleader sees proper to charge the receipt of a rebate, which means the receipt of the payment of the rebate after the carriage had been concluded and the published rate paid by the shipper, then each payment constitutes an offense, and, although each payment includes a number of concessions, it is only a single offense. Supposing that the government had been unable to prove the payment and its receipt by the defendant, or to some person for his use; could it be contended that there could be a conviction under an indictment charging, as this indictment does, "that the defendant received and accepted a certain sum of money as a rebate on a certain shipment," even if there was evidence of an agreement between the shipper and carrier for a rebate or concession, and the shipments had been made under that agreement? Clearly not, for in that event the defendant would be convicted of an offense with which he was not charged in the indictment.

In United States v. Great Northern R. R. (C. C.) 157 Fed. 288, and United States v. Central Vermont Ry. Co. (C. C.) 157 Fed. 291, Judge Hough had before him this same question, and he held in the

first case that each separate payment is properly the subject of a separate indictment or count; and in the second case:

"If there was, in fact, but one payment, although many items of goods carried, I adhere to the opinion that there should be but one penalty inflicted for the illegal transaction, i. e., the ultimate offense of unlawful payment."

The same conclusion was reached by Judge Knappen in the Western district of Michigan in United States v. Stearns Salt & Lumber Co. (D. C.; decided November 16, 1908) 165 Fed. 735. In that case the facts were practically identical with those in the case at bar. There were two shipments, but the rebates were paid simultaneously in one draft. Judge Knappen, in his opinion, calls attention to the same distinction made herein. He said:

"It will be noted that the indictment does not in terms charge any commission by defendant of any offense in accepting or receiving a discrimination or concession with respect to the transportation of the lumber, except as such discrimination or concession is involved in the payment at the end of the month of the rebate in question. It is thus unnecessary to decide what the rule would be in case the indictment had in terms charged the acceptance of a discrimination at the time of the shipment by way of agreement for the return and acceptance of the rebate, followed by such subsequent return and acceptance."

These decisions meet with my approbation, and therefore I hold that the defendant can only be held guilty of three offenses under his plea to the first count, one offense on counts 12, 14, 15, and 20, and one offense on counts 21, 24, 25, 26, and 31.