UNITED STATES v. VACUUM OIL CO. (three cases). SAME v. STANDARD OIL CO. OF NEW YORK (three cases). SAME v. STANDARD OIL CO. OF NEW YORK et al.

(District Court, W. D. New York. January 4, 1908.)

Nos. 467–470, 472–474.

1. CARRIERS—VIOLATION OF INTERSTATE COMMERCE ACT—INDICTMENT OF SHIPPER FOR RECEIVING REBATES.

In the prosecution of a shipper for receiving rebates or concessions in violation of section 1 of the Elkins Act of Feb. 19, 1903, c. 708, 32 Stat. 847 [U. S. Comp. St. Supp. 1907, p. 880], which forbids the granting or receiving of any rebate or concession whereby property shall "by any device whatever" be transported in interstate commerce at a less rate than that named in the tariffs published and filed by the carrier, where it is averred that there was an established through rate between the terminal points of the shipment to which the carriers concerned were parties, the indictment need not aver the route over which the shipment was actually made.

2. SAME.

Such an indictment need not specifically charge the actual payment of the unlawful lower rate conceded which is not an essential element of the offense, although proof of such payment may be given on the trial.

3. COMMERCE—SUBJECTS OF REGULATION—TRANSPORTATION CHARGES.

The fact that a concession from the published and filed through rate on an interstate shipment over the lines of connecting carriers was given entirely by the initial carrier for transportation over its own line wholly within one state does not relieve the shipper receiving such concession from liability to prosecution therefor under the Elkins Act of Feb. 19, 1903, c. 708, 32 Stat. 847 [U. S. Comp. St. Supp. 1907, p. 880].

4. CARRIERS—VIOLATION OF INTERSTATE COMMERCE ACT—SEPARATE OFFENSES —SUCCESSIVE SHIPMENTS.

Under the Elkins Act of Feb. 19, 1903, c. 708, 32 Stat. 847 [U. S. Comp. St. Supp. 1907, p. 880], which makes it unlawful for a shipper to receive "any concession" from the published and filed rate for the interstate transportation of property, where the published rate relates to transpor-

tation in car load lots and the shipments are so made, concessions received and accepted on such shipments were upon the property transported, and not upon the conceded rate, and each shipment on which a concession was given constitutes a separate offense.

5. SAME—ELKINS ACT—CONSTITUTIONALITY.

The Elkins Act of Feb. 19, 1903, c. 708, 32 Stat. 847 [U. S. Comp. St. Supp. 1907, p. 880], is not unconstitutional as in violation of the fifth amendment because it subjects a shipper to criminal prosecution for accepting a concession from a rate published and filed without permitting him as a defense to show that the established rate was extortionate and unreasonable. and that the rate paid was reasonable.

On Demurrers to Indictments.

S. Wallace Dempsey, Special Ass't to Attorney General.

Kenefick, Cooke & Mitchell (James McCormick Mitchell, of counsel), for defendants.

HAZEL, District Judge. The principal grounds of demurrer to each indictment may be summarized as follows: That the indictments do not specify the route from Olean to Norwood on which the established rate applied, nor the route over which the freight was transported; nor the payment by the defendants to the carriers of the alleged unlawful rate; nor that the shipments were made at a less rate than the tariff of rates published and filed; that the Elkins act is unconstitutional, and, generally, that the indictments do not charge an offense.

Assuming that there were two separate routes from Olean to Norwood in the state of New York, on the connecting roads mentioned in the indictments, are the indictments invalid because they fail to charge the particular route over which the petroleum in fact was transported? It is not alleged that there were two routes available to the initial carrier from the point of shipment to Norwood, but defendant contends that the court will take judicial notice of the fact that there are two different routes by which freight could have been transported between the points mentioned; one via Rochester and the other via Buffalo. Upon this point it is sufficient to say that the court will take judicial notice of such established railroad routes as are generally known and used. It is not to be supposed, however, that ordinarily petroleum would be conveyed from Olean to Norwood by way of Buffalo which is geographically located farther from the point of shipment than Rochester (to which routing the rate in terms applied), and appreciably farther from the point of ultimate destination. In my estimation it is wholly immaterial with regard to the validity of the indictment that there were two routes by which the merchandise could have been conveyed. According to the indictment there existed an established rate for a through or continuous shipment, and the carriers under the common arrangement were bound to transport the petroleum at the scheduled rate irrespective of any facilities for a different routing. If the merchandise was intentionally and knowingly carried over a route other than the established route at a lower rate than the filed rate, the court may fairly suppose that the act to regulate commerce was disobeyed. The Elkins act under consideration in positive terms

forbids giving a concession in respect to property transported interstate "whereby any such property shall be transported by any device whatever" at a less rate than the rate published and filed. In Armour Packing Co. v. United States, 153 Fed. 1, 82 C. C. A. 135, it was not held, as I read the case, that the particular route for transportation where the carriers have facilities for shipment by different routes between two points, must be specifically alleged in the indictment. The first ground of demurrer is overruled.

The contention that actual payment of the unlawful rate is not specifically charged in the indictment was much debated at the hearing of the demurrers. I think there is a material distinction between the payment of a rebate to a shipper and the acceptance by the latter of a concession or unjust discrimination. The actual turning over of the money representing the lower tariff rate is not the important element of the offense, and a concession or unjust discrimination may be given and accepted which does not necessarily involve the payment of the fixed rate, or the forwarding of the freight at a lower rate than that published and filed. Admittedly, the transportation of the commodities in question was at a less rate than the established rate, and to knowingly accept such a concession from the carrier assumes the payment by the shipper at the lower rate for the transportation, and proof of such payment may undoubtedly be given at the trial. If the government fails to prove payment at the lower rate it would perhaps have a material bearing upon the unlawful intent, but prima facie the offense was consummated when the property was transported at the unlawful rate, and the payment of the rate, when, by whom, how or under what circumstances, is not deemed an essential allegation. United States v. Standard Oil Co. (D. C.) 155 Fed. 305. Although in the Armour Case the indictment seems not to have charged that the lower rate was paid by the defendant, yet it clearly appears from the opinion of the court that evidence was received at the trial to establish such payment. The court has carefully read the indictments and considered the argument of counsel, and it is thought that the character of the offense is described with sufficient clearness to advise the defendants of the charge which they are required to meet at the trial.

Another point urged by the defendants is that the concessions relate merely to intrastate shipments. The indictments allege that the transportation was pursuant to a common arrangement for a continuous shipment from Olean to Burlington, and it appears that the concessions given the defendants were over a route extending from Olean to Norwood, points within this state, and not from the aggregate rate for the transportation interstate. I can conceive of no sound reasoning in the claim that because all the connecting carriers from Norwood to Burlington did not join in giving the concessions that the indictments are insufficient in law. If the concessions were over a route between points in this state it would be an anomalous holding to relieve the offending carrier because all the railroad companies parties to the common arrangement have not participated in the criminal act.

The next proposition is whether the various shipments set forth in the different counts of the indictments constitute in law separate and

distinct offenses punishable by the imposition of separate penalties for each offense. Counsel have assumed this question to be properly raised by demurrer, and I have, therefore, given it such consideration as its importance demands. The rule governing the punishment in the cases at bar apparently hinges upon whether separate or distinct offenses are forbidden by the statute, or whether the offense was continuous in its character. Wharton's Cr. Law (10th Ed.) § 27, p. 36; United States v. Standard Oil Co., supra. Turning again to the indictment, it will be observed that it is alleged in substance that the established rate of 26½ cents per hundred pounds plus $23 for each tank car relates only to the transportation in car load lots; and the acceptance of concessions by the defendants on different days at lower rates is charged as separate and distinct offenses. The statute declares in effect that it shall be unlawful for any person or corporation to accept "any concession" in respect to the transportation of any property, and hence it will be observed that the statute contemplates as an act of violation the shipment of any property at the illegal rate. If, therefore, the merchandise was transported in car load lots, the tariff rate being fixed upon such shipments, the concessions which the defendants received and accepted were upon the property transported, and not upon the conceded rate. The cases cited by defendants are not applicable. They principally relate to actions to recover penalties, or to cases wherein continuous offenses are charged in the indictment. Nor is the decision of Judge Hough in United States v. Great Northern Ry. Co. (not yet reported) 157 Fed. 288, opposed to this conclusion.

The next question is that the Elkins act (Act Feb. 19, 1903, c. 708, § 1, 32 Stat. 847 [U. S. Comp. St. Supp. 1907, p. 880]), which provides that a shipper shall be guilty of a misdemeanor if he accepts a concession from a rate published and filed as required by the act without permitting him, when prosecuted for a violation thereof, to prove the unreasonableness of the established rate and the reasonableness of the rate paid, is unconstitutional and void. The earnest discussion of this question by counsel for defendants and the special counsel for the government has induced a careful reading of the cases cited in the briefs, and a faithful consideration of the reasoning in support of the contention. It is suggested that, because of the grave importance of this constitutional question, the court can safely and properly resolve the doubts in favor of the defendants solely to permit the United States to at once prosecute an appeal to the Supreme Court under the provisions of the recent act of Congress providing for writs of error by the government in criminal cases, to the end that the validity or invalidity of the act in question, so far as it relates to the shipper and the asserted deprivation of its constitutional rights, may be settled by the court of final resort. To this suggestion, however, I must withhold my sanction because of the firm conviction entertained that neither the Elkins act nor the feature relating to a violation thereof by shippers is fairly open to the claim that a violation of the fifth amendment to the Constitution is threatened. Even if the question submitted were a doubtful one, it would not be a sufficient ground to justify a decision in favor of the defendants. The argument proceeds upon the theory that the shipper is subjected to

punishment for accepting a concession from the lawful rate filed and published by the carrier, without permitting him to defend himself in any criminal prosecution, and excuse his participation in the offense on the ground that the rate paid was extortionate and unreasonable; that although the act of 1887 and its amendments give the shipper a civil remedy for correcting abuses, namely, by complaining to the Interstate Commerce Commission, injunction, by action at law for the recovery of excess of rates paid and damages arising from such payment, yet on the trial of an indictment charging it with receiving a rebate, concession, or unjust discrimination it is deprived of the right to prove the unreasonableness of the established rate. To state the proposition in the light of the defendants' civil remedy which is strictly preserved, for the Elkins act is not independent of the original act, but supplementary thereto, is almost to refute it. That Congress had power under the commerce clause of the Constitution to regulate commerce is conceded, and its purpose in enacting the statute forbidding unjust discrimination and preference to the end that all shippers shall secure uniform treatment is beyond question. How this object and purpose of Congress can be effectuated if a shipper receiving rebate, concession, or discrimination is permitted to question or litigate the legality of the rate as to its reasonableness or unreasonableness in a criminal prosecution charging him with having received a concession is difficult to understand. Indeed such a construction of the act would nullify its general scope, and render its strict enforcement wholly impracticable, for juries and judges in different jurisdictions would not be likely to reach a conclusion upon the subject of just or unjust tariff charges which would secure uniformity of rates. It is therefore clear that there can be no departure or deviation from the established rates except in the manner provided by the act, and such rate must be regarded as binding upon the shipper. In Texas & Pac. Ry. Co. v. Abilene Cotton Oil Co., 204 U. S. 426, 27 Sup. Ct. 350, 51 L. Ed. 563, this doctrine as announced in Swift v. Philadelphia, etc., Ry. Co. (C. C.) 64 Fed. 59 and in Kinnavey v. Terminal R. R. Association (C. C.) 81 Fed. 802, was distinctly approved. The shipper must obey the provisions relating to the payment of transportation charges that have been scheduled and filed, and he cannot be heard to exclaim in a criminal trial against him for violation of the act that the lawful rate fixed by the carriers was extortionate or unreasonable, and therefore the lower freight charge was lawful. True, the question of unreasonableness of the tariff rate, and whether its operation results in the taking of private property without due process of law, is judicial in its nature, and Congress in the act under consideration has not expressly given the Commission power to fix rates; and, furthermore, such power perhaps cannot be presumed simply because the established rates filed with the Commission must in the first instance be regarded as prima facie reasonable. Illinois Central Ry. Co. v. I. C. C., 206 U. S. 444, 27 Sup. Ct. 700, 51 L. Ed. 1128. There can, therefore, be no weight given to the theoretical reasoning or remote possibility that a defendant who declines to pay to the carriers the asserted unreasonable rate, and accepts a less rate than that published and filed, must be prosecuted

criminally before he has opportunity to prove the actual unreasonableness of the filed rate. The shipper must pay the filed rate, submitting his claim of unreasonableness to later determination. Texas & Pac. Ry. Co. v. Abilene Cotton Oil Co., supra. Any other construction, as already stated, would not afford that degree of protection to all shippers that Congress designed to secure.

The demurrers are overruled on all grounds.