## WHITE *v.* JOHNSON ET AL.

No. 29.   Argued December 5, 1930.—Decided January 5, 1931.

*Mr. Henry K. Urion,* with whom *Mr. Henry W Drucker* was on the brief, for White.

*Solicitor General Thacher,* with whom *Messrs. Charles H. Weston* and *William G. Davis,* Special Assistants to the Attorney General, were on the brief, for Johnson et al.

MR. JUSTICE ROBERTS delivered the opinion of the Court.

The Circuit Court of Appeals has certified five questions. From the statement of facts contained in the certificate it appears that since August 15, 1926, appellant has owned and operated a radio broadcasting station in Chicago and has had successive licenses from the Secretary of Commerce, and (after the enactment of the Radio Act of 1927, c. 169, 44 Stat. 1162; U. S. C. Supp. III, title 47, § 81, *et seq.*) from the Federal Radio Commission. Under those from the Commission he at first broadcasted on a wave length of 760 kilocycles with a power of 500 watts, and subsequently on a wave length of 1340 kilocycles with the same power, and was required to divide time with two other stations.

On January 12, 1928, he filed an application for renewal of his then current license, which would expire on September 1, 1928. May 25, 1928, the Commission entered a

general order concerning that application and 163 others, stating that it was not satisfied that public interest, convenience or necessity would be served by granting any of them, and fixing a date for a hearing. Each applicant was notified that failing an affirmative showing that public interest, convenience or necessity would be served by granting his application it would be denied. Hearings were had on all the applications. Thereafter, on August 22, 1928, an order was promulgated by the Commission modifying the appellant's existing license by reducing the authorized power to 100 watts, and extending the term to October 1, 1928.

The approximate value of the physical equipment of appellant's station is $5,000. He has expended some $16,000 in its operation. At the time of the Commission's action his net profits were about $400 per week. His equipment will not operate efficiently or satisfactorily at 100 watts. To broadcast with that power he will have to replace a very substantial portion of his present apparatus. The reduction in power will restrict the area which can be served to one-fourth of its former size, and will cause the loss of a large portion of his listening public and advertising clientele.

Although § 16 of the Radio Act of 1927 (U. S. C. Supp. III, title 47, § 96) authorized an appeal from the Commission's order to the Court of Appeals of the District of Columbia, it was conceded at bar that appellant took none. He filed a bill *quia timet* in the United States District Court for the Northern District of Illinois praying that the enforcement of the criminal provisions of the act against him for violation of the order be enjoined; and, upon dismissal of that bill, appealed to the Circuit Court of Appeals for the Seventh Circuit.

The questions certified follow:

" Question 1. Did a person who, prior to the enactment of the Radio Act of 1927, applied for and was granted suc-

cessive licenses by the Secretary of Commerce for the operation of a broadcasting station, and who owned and continuously operated such broadcasting station, whereby it developed a following of listeners and advertisers which constituted a going business, have or acquire thereby property in the continued operation of such station, with power appropriate to continue the operation of said business, within the meaning of the word ' property ' as used in the Fifth Amendment to the Constitution of the United States?

" Question 2. If the answer to Question 1 is in the affirmative, is the Joint Resolution of Congress of December 8th, 1926 valid as against the claim that by virtue of the waiver it requires it works a deprivation of such property without due process of law or a taking of private property for public use without just compensation?

" Question 3. If the answer to Question 1 is in the affirmative, is the Radio Act of 1927, as amended, valid as against the claim that, by virtue of the waiver required in the last paragraph of Section 5 and by virtue of the condition required to be contained in all licenses by subparagraph (A) of Section 11, it works a deprivation of such property without due process of law or a taking of private property for public use without just compensation?

" Question 4. If the answer to Question 1 is in the affirmative, is the Radio Act of 1927, as amended, valid as against the claim that it authorizes or requires the Federal Radio Commission, in its action on an application for renewal of license by a person such as is described in Question 1, to take private property for public use without just compensation, either by denying such application or by granting it on such terms as virtually to destroy a going broadcasting business of such person?

" Question 5. If the answer to Question 1 is in the affirmative, is the Radio Act of 1927, as amended, valid as against the claim that it authorizes or requires the Fed-

eral Radio Commission, in acting upon an application for renewal of license by said person, to deprive such person of such property without due process of law, in that the only standards provided by the Act for the guidance of the Commission in acting upon such applications are that of ' public interest, convenience or necessity ' and that set forth in Section 5 of the Amendatory Act of March 28, 1928, and in that the Act fails to require that the Commission, prior to proceeding to a hearing or decision on such application, shall specify in what respect it deems or has failed to find that the granting of such application would not serve public interest, convenience or necessity? "

Rule 37 (Par. 1) of this Court provides, *inter alia:*

. . . . " Only questions or propositions of law may be certified, and they must be distinct and definite."

The court has repeatedly held that it will not answer questions of objectionable generality. *United States* v. *Worley,* 281 U. S. 339, 340; *United States* v. *John Barth Co.,* 276 U. S. 606; *United States* v. *Mayer,* 235 U. S. 55, 70; *United States* v. *Northway,* 120 U. S. 327. And a question is improper which is so broad and indefinite as to admit of one answer under one set of circumstances and a different answer under another. *Enfield* v. *Jordan,* 119 U. S. 680; *Jewell* v. *Knight,* 123 U. S. 426; *Hallowell* v. *United States,* 209 U. S. 101.

The first question inquires merely whether the employment of tangible property in an existing business begets in the proprietor a " property " in the continuance of the business, as the word "property " is used in the Fifth Amendment. It is so broad and indefinite that an answer would not necessarily be of assistance in the decision of the cause. It was never intended that in answer to a question certified, we should give a dissertation on the application of the Fifth Amendment. Were we to attempt to do so, we should have to assume the existence of facts and circumstances, the absence of which from the record

might render our statements wholly irrelevant. *Reinecke* v. *Gardner*, 277 U. S. 239. The essence of the amendment is its application under all the circumstances of a given case. A broad statement as to whether a thing or a status is property within its intent might well be meaningless or misleading.

Much argument was directed to the proposition that one who first establishes a broadcasting station in and serves a given area thereby appropriates that portion of the ether which he employs or through which the station's radio activity operates; and it was suggested that in analogy to the doctrine as to appropriation of waters, *et id omne genus,* a property right is thus acquired. It was urged that the question presents this proposition; but it clearly fails so to do. We are not required to answer it.

Questions 2 and 3 are contingent upon our answer to question 1. The first asks whether, if we answer question 1 in the affirmative, the Joint Resolution of December 8, 1926, is valid as against the claim that by virtue of the waiver it requires of the applicant for a license it violates certain constitutional guaranties. The second asks whether, if our answer to question 1 be in the affirmative, the Radio Act of 1927, as amended, is valid as against the claim that by virtue of the similar waiver required in the last paragraph of Section 5, and the waiver required to be contained in all licenses, it violates the same constitutional guaranties.

The appellees concede that if a person has a right guaranteed by the Constitution, legislation requiring that such right be waived as a condition of the exercise of a privilege granted would be invalid. However that may be, no such concession calls on us to answer questions which are themselves contingent on another which we do not answer.

The fourth question asks us to say whether, if our answer to question 1 is in the affirmative, the Radio Act of

1927, as amended, is valid as against the claim that it authorizes or requires the Federal Radio Commission, in acting on an application for renewal of license by a person such as described in question 1, to take private property for public use without just compensation, by denying or granting the application on terms destructive of the going business of the applicant.

This question we need not answer, for the reasons stated as to the two preceding. But it has another fatal defect. An answer would involve merely an examination of the Act and a determination whether on its face it violates the Fifth Amendment. Neither this Court nor the court below is authorized to answer academic questions. The constitutionality of a statute is not drawn into question except in connection with its application to some person, natural or artificial. We have above called attention to the provisions of the Radio Act which give redress against arbitrary or unjust action by the Commission. We repeat that the appellant did not see fit to avail himself of the right of appeal thereby conferred, but on the contrary chose to violate the Commission's order and to stand on an alleged constitutional right which he says the action of the Commission infringed. It would be subversive of all established principles were courts, in litigations between parties, who have reciprocal rights under the Constitution, to settle their controversies by broad statements to the effect that acts of Congress are unconstitutional upon their face; and this not only in ignorance of the circumstances and manner of the application of the statute by the administrative body, but with knowledge that the party complaining had failed to pursue the remedy provided by law.

The fifth question not only is contingent on our answer to question 1, but assumes that the Radio Act may be unconstitutional because it fails to provide a specific method of procedure and does not furnish a standard of

374

conduct for the Commission. But the appellant's rights, as respects procedure, depend not alone on the alleged requirements of the Act, but on the adequacy of the hearing in fact afforded him; and his substantive rights under the statute depend upon the public interest, convenience or necessity in view of all the facts adduced and circumstances appearing before the Commission. We are not advised what sort of hearing was held, nor what facts were proved. If the proceeding was an unfair one, as lacking adequate notice, full hearing, or development of all relevant facts, appellant had a remedy provided by the statute, which in the orderly processes of the administration of the law he was bound to pursue. To answer the question as framed we should have to treat the proceedings before the Commission as irrelevant; to hold that body's interpretation of the language of the act as applied to appellant in all the circumstances of his case as of no moment; and to ignore his admitted failure to avail himself of the right of review conferred by the statute. The question need not be answered.

*The certificate is dismissed.*