NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**IN RE:  LAKSHMI ARUNACHALAM,**
*Appellant*

---

2016-1607

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. 90/010,417.

---

Decided:  October 3, 2017

---

LAKSHMI ARUNACHALAM, Menlo Park, CA, pro se.

NATHAN K. KELLEY, Office of the Solicitor, United States Patent and Trademark Office, Alexandria, VA, for appellee Joseph Matal.  Also represented by KAKOLI CAPRIHAN, SARAH E. CRAVEN, THOMAS W. KRAUSE.

---

Before NEWMAN, CLEVENGER, and CHEN, *Circuit Judges.*

PER CURIAM.

Lakshmi Arunachalam, proceeding pro se, owns U.S. Patent No. 6,212,556 ('556 Patent), which is a continuation-in-part of another patent that she owns, U.S. Patent No. 5,987,500 ('500 Patent).  An ex parte reexamination of

the '556 Patent resulted in the Patent Trial and Appeal Board (Board) concluding that certain claims of the patent were unpatentable as either anticipated or obvious. Dr. Arunachalam appeals the Board's decision. However, the '556 Patent claims before the Board are not materially different from certain claims of the '500 Patent that were previously invalidated by a district court. Nor are they materially different from other patent claims of Dr. Arunachalam's in which we applied collateral estoppel to bar her from challenging a prior Board unpatentability decision. As with her appeal from that prior Board decision, we conclude that collateral estoppel bars Dr. Arunachalam from challenging the Board's decision in this case. Moreover, after carefully considering her briefs, we further conclude that Dr. Arunachalam failed to show reversible error in the Board's unpatentability decision. In view of the foregoing, we *affirm* the Board's decision.

INTRODUCTION

A. Technology

The '556 Patent and the '500 Patent are generally directed to systems and methods that allow a user to engage in real-time, two-way transactions over networks, such as the Internet. *See, e.g.*, '556 Patent at [57] (Abstract); '500 Patent at [57] (Abstract). This real-time transaction can be achieved using what the patents describe as a "value-added network" (VAN) switch. *See* '556 Patent col. 2 ll. 42–56; '500 Patent col. 2 ll. 32–42. For example, the VAN switch allows a user to purchase goods and services from a merchant over the Internet, i.e., engage in a real-time, two way transaction, *see* '556 Patent col. 5 l. 53–col. 6 l. 31; '500 Patent col. 5 ll. 16–61, whereas before, the user was able to only view the offered goods and services and could not engage in a transaction, *see* '556 Patent col. 1 l. 46–col. 2 l. 39; '500 Patent col. 1 l. 34–col. 2 l. 28.

Figure 6A of the patents help conceptualize the claimed invention.



**FIG. 6A**

According to the patents, exchange 501 and management agent 601 "constitute a [VAN] switch" and "may take on different roles as necessary" to enable real-time, two-way transactions, '556 Patent col. 8 ll. 17–21; *see also* '500 Patent col. 7 ll. 42–46, but little else is said as to how the VAN switch specifically goes about handling such transactions.

Independent claim 1 of each patent exemplifies the claimed inventions.

1. *A switch for enabling real-time transactions on a value-added network*, comprising:

> *means for switching to a transactional application in response to a user specification from a network application*;

> means for transmitting a transaction request from the transactional application; and

> means for processing the transaction request, including performing object routing.

'556 Patent col. 30 ll. 59–67 (emphases added).

> 1. *A configurable value-added network switch for enabling real-time transactions on a network*, said configurable value-added network switch compromising:
>
> *means for switching to a transactional application in response to a user specification from a network application*, said transactional application providing a user with a plurality of transactional services managed by at least one value-added network service provider, said value-added network service provider keeping a transaction flow captive, said plurality of transactional services being performed interactively and in real time;
>
> means for transmitting a transaction request from said transactional application; and
>
> means for processing said transaction request.

'550 Patent col. 9 ll. 44–57 (emphases added).

### B. Litigation History of the '500 Patent

Dr. Arunachalam, through her company, Pi-Net International, Inc. (Pi-Net), previously asserted claims 1–6, 10–12, 14–16, and 35 (asserted claims) of the '500 Patent in the United States District Court for the District of Delaware (district court), but the district court eventually declared the asserted claims invalid. *See generally Pi-Net Int'l Inc. v. JPMorgan Chase & Co.*, 42 F. Supp. 3d 579, 588–94 (D. Del. 2014) (deeming claims invalid as indefinite, for lack of enablement, and for lack of written description). The district court held that the claim terms "VAN switch," "switching," and "value-added network system," which were used across the asserted claims, were indefinite. *Id.* at 590. The district court also held that the asserted claims were not enabled. *See id.* at 592 ("[T]he specification does not actually define, in language

that would allow a person of ordinary skill in the art to make and use the invention, what a 'VAN switch' is and how it accomplishes 'object routing' or real-time transactions. Instead, the specification presents an abstract concept of real-time transactions, in which a merchant and a user interact." (citation omitted)). And the district court found that the asserted claims did not have sufficient written description. *See id.* at 594 ("The crux of the invention is 'real-time' transactions for the user; there is no disclosure of how these occur. The [district] court concludes that the [asserted claims of the '500 Patent] . . . are invalid for lack of written description.").

"Pi-Net appealed, but that appeal was subsequently dismissed for failure to prosecute after being unable to file a brief that complied with [our] word-limit requirements." *Arunachalam v. SAP America, Inc.*, No. 15-1424, slip order at 4 (Fed. Cir. Sept. 23, 2016) (*Arunachalam Order*) (citing *Pi-Net Int'l, Inc. v. JPMorgan Chase & Co.*, 600 F. App'x 774 (Fed. Cir. 2015)). "Pi-Net filed a petition for rehearing at this court, a petition for a writ of certiorari at the Supreme Court of the United States, and a petition for rehearing at the Supreme Court, all of which were denied." *Id.*

Sometime during the district court litigation, SAP America, Inc. (SAP) challenged the patentability of claims 1–6, 10–12, 14–17, and 35 (challenged claims) of the '500 Patent through an inter partes review (IPR). *See id.* at 4. The Board concluded that these challenged claims were unpatentable. *Id.* Dr. Arunachalam appealed the Board's conclusions. *Id.* SAP argued that Dr. Arunachalam was collaterally estopped from appealing the Board's decision concerning the challenged claims of the '500 Patent because the district court had already declared them invalid. *See id.* SAP extended this argument to claim 17, which was not asserted in the district court litigation. *See id.* at 4–5. We agreed with SAP. In doing so, we explained that:

> "Where a patent has been declared invalid in a proceeding in which the 'patentee has had a full and fair chance to litigate the validity of his patent,' the patentee is collaterally estopped from relitigating the validity of the patent." . . . [C]ollateral estoppel is not limited "to patent claims that are identical. Rather, it is the identity of the *issues* that were litigated that determines whether collateral estoppel should apply."

*Id.* at 4–5 (alteration and citation omitted) (first quoting *Miss. Chem. Corp. v. Swift Agric. Chems. Corp.*, 717 F.2d 1374, 1376 (Fed. Cir. 1983); and then quoting *Ohio Willow Wood Co. v. Alps South, LLC*, 735 F.3d 1333, 1342 (Fed. Cir. 2013)).

We then concluded that Dr. Arunachalam was collaterally estopped from appealing the Board's decision with respect to the claims of the '500 Patent that were asserted in the district court *and* challenged in the IPR because these claims had already been declared invalid in the district court litigation. *See id.* at 5. We also concluded that she was collaterally estopped from appealing the Board's decision with respect to challenged claim 17 of the '500 Patent, even though that claim had not been asserted in the district court litigation, because it was not materially different than the claims of the '500 Patent asserted in the district court. *See id.* at 7 ("'[T]he differences between the unadjudicated patent claims and adjudicated patent claims do not materially alter the question of invalidity' here, [so] 'collateral estoppel applies.'" (quoting *Ohio Willow*, 735 F.3d at 1342)). Of particular relevance to our collateral estoppel decision, we noted that claim 17 contained the VAN switch limitation, which the district court previously held was not enabled in the other asserted claims of the '500 Patent. *See id.* It was of no import that the claims of the '500 Patent were adjudicated in different fora. *See id.* at 6–7 (first citing *In re Freeman,*

30 F.3d 1459, 1468–69 (Fed. Cir. 1994); and then citing *B & B Hardware, Inc. v. Hargis Indus., Inc.*, __ U.S. __, 135 S. Ct. 1293, 1303 (2015)). Further, we observed that Dr. Arunachalam was represented at all times by counsel during the district court litigation involving the '500 Patent, and thus, she already had a full and fair opportunity to defend its patentability. *See id.* at 5–6. We, therefore, declined to disturb the Board's decision concerning the challenged claims of the '500 Patent and dismissed the appeal as moot. *See id.* at 7.

## C. Litigation History of the '556 Patent

In the present case, Microsoft Corporation requested an ex parte reexamination of the '556 Patent, and the Board found that claims 1–13, 15–23, 25–27, and 29 were unpatentable as anticipated and held that claims 14 and 28 were unpatentable as obvious. Dr. Arunachalam appeals the Board's decision in the reexamination. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(4)(A) (2012).

## DISCUSSION

The Patent and Trademark Office (PTO) contends that Dr. Arunachalam's appeal should be dismissed because she is collaterally estopped from arguing the patentability of the challenged claims of the '556 Patent as a result of *JPMorgan*, where the district court invalidated certain claims of the '500 Patent. *See* Appellee Br. at 17–23. Specifically, every challenged claim of the '556 Patent "recites a limitation [from the '500 Patent that was] held in *JPMorgan* to be indefinite or non-enabled," i.e., "'switch,' 'switching,' and/or a 'means for switching' to enable "real-time transactions." *Id.* at 19. In liberally construing Dr. Arunachalam's briefing, we understand her to challenge the applicability of collateral estoppel in this appeal, but she offers no explanation as to why we should not apply collateral estoppel, as we did in the

*Arunachalam Order*, and affirm the PTO's decision.  We thus agree with the PTO.

As noted, where a patentee has had a full and fair opportunity to litigate the validity of a patent in one proceeding, but is ultimately unsuccessful, the patentee is collaterally estopped from relitigating the validity or patentability of the patent in a later proceeding.  *See Miss. Chem.*, 717 F.2d at 1376.  And notwithstanding any differences between the patent claims in the two proceedings, collateral estoppel is still applicable because the focus is on "the identity of *issues*" that has been litigated in both proceedings.  *Ohio Willow Wood*, 735 F.3d at 1342.

Here, we again conduct the analysis that guided our decision in the *Arunachalam Order*.  Our comparison of the challenged claims of the '556 Patent that were deemed unpatentable by the Board with the asserted claims of the '500 Patent that were declared invalid by the district court reveals that any differences between the two sets of claims are not material such that those differences would affect the patentability of the challenged claims of the '556 Patent.  *Compare, e.g.*, '556 Patent col. 30 ll. 57–59 (independent claim 1), *id.* col. 31 ll. 39–58 (independent claim 13), *and id.* col. 32 ll. 44–67 (independent claim 26), *with* '500 Patent col. 9 ll. 44–57 (independent claim 1), *and id.* col. 10 ll. 34–48 (independent claim 10).  Every challenged claim of the '556 Patent contains the terms "switch," "switching," or a "means for switching" in the context of enabling two-way, real-time transactions—all terms that have been the bases for declaring other claims invalid as indefinite, for lack of enablement, and for lack of written description in *JPMorgan*.  *See* 42 F. Supp. 3d at 588–94.

Moreover, despite that the '556 Patent is a continuation-in-part of the '500 Patent with additional disclosures, the '556 Patent's discussion concerning these specific terms remains nearly identical to its counterpart in the

'500 Patent. *Compare, e.g.*, '556 Patent col. 1 l. 20–col. 10 l. 12, *with* '500 Patent col. 1 l. 11–col. 9 l. 31. The '556 Patent's additional disclosures do not further explain what a "VAN switch" is or how it enables two-way, real-time transactions. *See* '556 Patent figs. 9–22; *id.* col. 10 1. 13–col. 30 l. 57. And Dr. Arunachalam's briefs point to no evidence in the additional disclosures that addresses the § 112 issues.

In light of Dr. Arunachalam's previous opportunity to litigate the validity of the asserted claims of the '500 Patent, which contain the terms "switch," "switching," and a "means for switching," we see no reason to allow her to appeal the patentability of the challenged claims of the '556 Patent, which also contain the same critical terms.[1]

Furthermore, Dr. Arunachalam has failed to show the Board committed a reversible error in its decision to affirm the Examiner's anticipation and obviousness rejections over Ginter. Dr. Arunachalam's briefs list a number of claim constructions and conclusory statements, but they do not adequately explain how these constructions overcome the Examiner's findings of anticipation and obviousness. Accordingly, Dr. Arunachalam's arguments on the merits are not persuasive.

---

[1] We note that *Securities & Exchange Commission v. Chenery Corp.*, 318 U.S. 80 (1943) does not apply here because collateral estoppel is a legal finding that does not require new fact finding. *Canonsburg Gen. Hosp. v. Burwell*, 807 F.3d 295, 304 (D.C. Cir. 2015) ("*Chenery* does not apply to legal principles like [collateral estoppel]." (citations omitted)).

All of Dr. Arunachalam's remaining arguments for reversing the Board's decision are unavailing.[2]

CONCLUSION

For the foregoing reasons, we *affirm* the Board's decision.

**AFFIRMED**

COSTS

No Costs.

---

[2] We deny Dr. Arunachalam's two motions seeking to have us certify certain purported legal questions to the United States Supreme Court as she has not precisely identified any question of national importance that should be decided before we resolve this appeal. *See* U.S. Sup. Ct. R. 19(a); *see also White v. Johnson*, 282 U.S. 367, 371 (1931) ("The [C]ourt has repeatedly held that it will not answer questions of objectionable generality." (citations omitted)).