GROCER'S CO-OP. DAIRY CO. v. CITY OF GRAND HAVEN et al.
Civil Action No. 1115.

United States District Court
W. D. Michigan, S. D.

Sept. 13, 1948.

---

939

Harold S. Sawyer, Jr., and Warner, Norcross & Judd, all of Grand Rapids, Mich., for plaintiff.

L. H. Grettenberger, of Grand Rapids, Mich., and Charles E. Misner, of Grand Haven, Mich., for defendants.

STARR, District Judge.

Plaintiff, a corporation owning and operating a plant for the pasteurization, bottling, and packaging of milk and milk products in the city of Grand Rapids, Michigan, filed complaint under the Federal Declaratory Judgments Act, 28 U.S. C.A. § 400 (New Judicial Code, 28 U.S. C.A. §§ 2201, 2202), against the city of Grand Haven, Michigan, a municipal corporation, and the above-named officials of that city. It asked that section 13 of the so-called milk ordinance of Grand Haven be adjudged unconstitutional on the ground that it deprives plaintiff of the right to engage in a lawful business in that city and is, therefore, repugnant to the Fourteenth Amendment of the Federal Constitution; also that defendants be enjoined from refusing to issue it a license to sell milk and milk products in that city. Section 13 of the milk ordinance provides:

"No pasteurized milk or milk products shall be sold in the city of Grand Haven that is pasteurized more than five miles outside of the city limits, and no Grade A raw milk shall be sold that is produced more than ten miles outside of the city limits, except during periods of emergency when approved by the health officer.

"Milk and milk products from points beyond the limits of inspection of the city of Grand Haven may not be sold in the city of Grand Haven, or its police jurisdiction unless produced and pasteurized under grading provisions identical with those of this ordinance; provided that during periods of emergency when so declared by the Board of Public Welfare, milk, other than that described above may be sold in the city of Grand Haven when approved by the health officer; provided further that all such milk which is not produced under grading provisions identical with those of this ordinance, shall be labeled 'ungraded' or such other distinctive labeling as the health officer may approve."

The defendants moved to dismiss the complaint on the ground that there was no "actual controversy" between the parties, within the meaning of that term as used in the Federal Declaratory Judgments Act; and on the further ground that section 13 was ambiguous and this court should not assume jurisdiction until the State courts of Michigan had judicially interpreted the provisions of that section. Decision on this motion was withheld, and defendants answered, reasserting the grounds for dismissal raised in their motion.

■ The Federal Declaratory Judgments Act provides that in cases of "actual controversy" Federal courts shall have power upon appropriate pleadings to declare rights and other legal relations of any interested party petitioning for such a declaration, whether or not further relief is or could be prayed for. Under this Act an "actual controversy" must exist before the court can assume jurisdiction to declare the rights of the parties in the present case. As the Act is a remedial one, providing a method for the prompt and efficient determination of rights, it should be liberally construed. Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123, 5 Cir., 137 F.2d 176, affirmed 321 U.S. 590, 64 S.Ct. 698, 88 L.Ed. 949, 152 A.L.R. 1014, rehearing denied 322 U.S. 771, 64 S.Ct. 1257, 88 L.Ed. 1596; Dewey & Almy Chemical Co. v. American Anode, Inc., 3 Cir., 137 F.2d 68, certiorari denied 320 U.S. 761, 64 S.Ct. 70, 88 L.Ed. 454. However, the Act did not and could not change the requirements of Article III of the Federal Constitution, which limits the exercise of the judicial power to "cases" and "controversies." In Aetna Life Insurance Co. v. Haworth, 300 U.S. 227, 239, 240, 57 S.Ct. 461, 463, 81 L.Ed. 617, 108 A.L.R. 1000, the court said:

"The Declaratory Judgment Act of 1934, in its limitation to 'cases of actual controversy,' manifestly has regard to the constitutional provision and is operative only in respect to controversies which are such in the constitutional sense."

■ In Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 325, 56 S.Ct. 466, 473, 80 L.Ed. 688, the court said:

"The Act of June 14, 1934, providing for declaratory judgments, does not attempt to change the essential requisites for the exercise of judicial power. By its terms, it applies to 'cases of actual controversy,' a phrase which must be taken to connote a controversy of a justiciable nature, thus excluding an advisory decree upon a hypothetical state of facts."

In Alabama State Federation of Labor v. McAdory, 325 U.S. 450, 461, 65 S.Ct. 1384, 1389, 89 L.Ed. 1725, the court said:

"The requirements for a justiciable case or controversy are no less strict in a declaratory judgment proceeding than in any other type of suit. Nashville, C. & St. L. R. Co. v. Wallace, 288 U.S. 249, 53 S.Ct. 345, 77 L.Ed. 730, 87 A.L.R. 1191; Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 57 S.Ct. 461, 87 L.Ed. 617, 108 A.L.R. 1000; Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826; Great Lakes Dredge & Dock Co. v. Huffman, 319 U.S. 293, 299, 300, 63 S.Ct. 1070, 1073, 1074, 87 L.Ed. 1407; Coffman v. Breeze Corporations, 323 U.S. 316, 65 S.Ct. 298 [89 L.Ed. 264]. This Court is without power to give advisory opinions. Hayburn's Case, 2 Dall. 409, 1 L.Ed. 436; United States v. Evans, 213 U.S. 297, 301, 29 S.Ct. 507, 508, 53 L.Ed. 803; Muskrat v. United States, 219 U.S. 346, 31 S.Ct. 250, 55 L.Ed. 246; Stearns v. Wood, 236 U.S. 75, 35 S.Ct. 229, 59 L.Ed. 475; Coffman v. Breeze Corporations, supra. It has long been its considered practice not to decide abstract, hypothetical or contingent questions, Giles v. Harris, 189 U.S. 475, 486, 23 S.Ct. 639, 642, 47 L.Ed. 909; District of Columbia v. Brooke, 214 U.S. 138, 152, 29 S.Ct. 560, 564, 53 L.Ed. 941; Anniston Mfg. Co. v. Davis, 301 U.S. 337, 355, 57 S.Ct. 816, 824, 81 L.Ed. 1143; Electric Bond & Share Co. v. Securities & Exchange Commission, 303 U.S. 419, 58 S.Ct. 678, 82 L.Ed. 936, 115 A.L.R. 105; United States v. Appalachian Electric Power Co., 311 U.S. 377, 423, 61 S.Ct. 291, 306, 85 L.Ed. 243, or to decide any constitutional question in advance of the necessity for its decision, Charles River Bridge v. Warren Bridge, 11 Pet. 420, 553, 9 L.Ed. 773; Trade Mark Cases, 100 U.S. 82, 96, 25 L.Ed. 550; Liverpool, N. Y. & P. S. S. Co. v. Immigration Com'rs, 113 U.S. 33, 39, 5 S.Ct. 352, 355, 28 L. Ed. 899; Burton v. United States, 196 U.S. 283, 295, 25 S.Ct. 243, 245, 49 L.Ed. 482; Arkansas Fuel Oil Co. v. Louisiana, 304 U.S. 197, 202, 58 S.Ct. 832, 834, 82 L.Ed. 1287, or to formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied, Liverpool, N. Y. & P. S. S. Co. v. Immigration Com'rs, supra, 113 U.S. at page 39, 5 S.Ct. at page 355, 28 L.Ed. 899; White v. Johnson, 282 U.S. 367, 371, 51 S.Ct. 115, 75 L.Ed. 388; Allen-Bradley Local v. Wisconsin Employment Relations Board, 315 U.S. 740, 746, 747, 62 S.Ct. 820, 824, 86 L.Ed. 1154, or to decide any constitutional question except with reference to the particular facts to which it is to be applied, Hall v. Geiger-Jones Co., 242 U. S. 539, 554, 37 S.Ct. 217, 222, 61 L.Ed. 480, L.R.A.1917F, 514, Ann.Cas.1917C, 643; Corporation Comm. v. Lowe, 281 U.S. 431, 438, 50 S.Ct. 397, 399, 74 L.Ed. 945; Continental Baking Co. v. Woodring, 286 U.S. 352, 372, 52 S.Ct. 595, 601, 76 L.Ed. 1155, 81 A.L.R. 1402; Great Atlantic & Pacific Tea Co. v. Grosjean, 301 U.S. 412, 429, 430, 57 S.Ct. 772, 779, 81 L.Ed. 1193, 112 A.L.R. 293."

See also Aetna Life Insurance Co. v. Haworth, supra; Fash v. Clayton, D.C., 78 F.Supp. 359.

 Although it has been said that in determining whether or not a justiciable controversy exists, it is not necessary that a cause of action have accrued in the technical sense of that term, Ohio Casualty Ins. Co. v. Maloney, D.C., 44 F.Supp. 312, nevertheless, a controversy must exist that has sufficiently matured for judicial decision. A court is not required by the Declaratory Judgments Act to decide abstract questions or to give advisory opinions. The controversy must be present, real, definite, and substantial. Aetna Life Insurance Co. v. Haworth, supra. The court should not undertake to decide a hypothetical or a contingent question, particularly when it is a constitutional question, in advance of the necessity for its decision. Alabama State Federation of Labor v. McAdory, supra.

Testimony. adduced at the trial established that plaintiff's pasteurization plant is located in the city of Grand Rapids, Michigan; that it sells milk and milk products at wholesale to independent grocers in and about that city; that Grand Rapids is about 35 miles from Grand Haven; and that plaintiff desires to sell its milk and milk products at wholesale to Grand Haven grocers. Anticipating difficulty because of the restrictive provisions of section 13, plaintiff appeared before the city council of Grand Haven on November 3, 1947, and presented its petition for permission to sell to grocers in that city, milk and milk products pasteurized in its Grand Rapids plant. It also orally requested the city council to delete section 13 from the milk ordinance. Various interested parties, including defendant city clerk, the city sanitarian, milk dealers, farmers, and representatives of independent grocers, were present at this council meeting, and considerable argument ensued. The council referred plaintiff's petition to the city attorney, who subsequently rendered his opinion that section 13 of the milk ordinance was unconstitutional. It appears that the council then tabled the petition and took no further action thereon.

About three months later, on February 13, 1948, plaintiff began the present suit. On the same day, and about one-half hour after beginning suit, plaintiff filed a written application with the city clerk of Grand Haven for a license to sell milk in that city. This application was on a printed form provided by the city and purported to follow the regular method of application prescribed by the provisions of the milk ordinance. This ordinance, of which section 13 is a part, was enacted by the city council in 1935, and its purposes are clearly indicated in the preamble, which states:

"An ordinance defining 'milk' and certain 'milk products,' 'milk producer,' 'pasteurization,' etc., prohibiting the sale of adulterated and misbranded milk and milk products, requiring permits for the sale of milk and milk products, regulating the inspection of dairy farms and milk plants, the examination, grading, labeling, placarding, pasteurization, regrading, distribution, and sale of milk and milk products, providing for the publishing of milk grades, the construction of future dairies and milk plants, the enforcement of this ordinance, and the fixing of penalties."

Section 4 of the ordinance provides in part: "No person shall sell or offer for sale, expose for sale, dispose of, exchange or deliver, or with the intent so to do have in his possession, care, custody or control, milk or milk products for human food, without having obtained a license for that purpose." Section 5 of the ordinance provides in part:

"Every person applying for license under this ordinance shall present with his application the names and locations of all producers from whom he obtains milk and a written agreement that in case he shall thereafter obtain milk from producers other than those named, he will report their names to the Board of Public Welfare. The applicant shall also at the time he makes application for his license, or thereafter in case he obtains milk from producers other than those from whom he was obtaining milk at the time of application for license, present a written consent from each producer from whom he obtains milk, granting permission to the Board of Public Welfare or its representatives free and open access to his dairy or premises for the purpose of making an inspection of the premises, equipment and herds.

"Every person required to obtain a license as provided in section 4 hereof shall apply for said license to the City Clerk or other official authorized by the City Council, such application to be in writing and in manner and form prescribed by the City Council. The City Clerk or other such official shall upon recommendation of the Board of Public Welfare or any person designated by it to act in such cases, issue a license to any person complying with the provisions of this ordinance, upon payment of the following fees."

■ The power of the city council of Grand Haven to prescribe the administrative and procedural steps which an applicant for a milk license must follow is unquestioned. The council had established

a licensing system for the sale of milk and milk products in the city and had specifically prescribed the manner in which licenses could be obtained. The application for a license was required to be in writing and in the form prescribed by the council. The authority to issue licenses was delegated to the city clerk, who acted upon the recommendation of the board of public welfare or the person designated to act in such cases. It appears that the city health officer had been designated to act and to pass upon applications for milk licenses, and that when an application was filed with the city clerk, he would refer it to the health officer, who would then inspect the plant and facilities of the applicant and the barns, equipment, and herds of the farmers from whom the applicant obtained milk. The health officer would then recommend to the city clerk whether or not a license should be issued to the applicant.

■ The petition which plaintiff presented to the city council on November 3, 1947, was not an application for the milk license provided for by the ordinance, but was only a request for special permission to sell milk in the city notwithstanding the provisions of section 13 of the ordinance. The petition was directed to the city council and not to the city clerk, and it was not accompanied by a list of the producers from whom plaintiff obtained milk or by written consent of such producers to the inspection of their dairy premises, equipment, and herds as required by the ordinance. It is clear that plaintiff did not make application to the city clerk for a milk license, as required by section 5 of the ordinance, until February 13, 1948, the date on which it began the present suit, and it should be noted that its application was filed with the clerk approximately one-half hour after it had filed complaint in this court asking that section 13 of the milk ordinance be declared unconstitutional. The city clerk neither issued nor refused to issue a license to plaintiff, nor could he have done either until after the city health officer had inspected the plaintiff's plant and sources of milk supply. It is obvious that plaintiff did not give the city health officer the opportunity to inspect its plant and sources of milk supply, nor

did it give the city clerk the opportunity to grant or deny its application for a license, prior to beginning the present suit.

■ Plaintiff claims that it would have been a useless act and an idle gesture to apply for a license in the manner prescribed by the milk ordinance because, in any event, the city clerk would have denied the application on the ground that its pasteurizing plant was located more than five miles outside the city limits. Therefore, plaintiff contends that it was unnecessary to apply for a license in the manner provided by the ordinance, because the law does not require a useless act from a litigant as a prerequisite to obtaining judicial relief. However, this contention by plaintiff ignores the fact that, had it applied for a license in the manner provided by the ordinance, the city clerk might have denied the application, not on the ground that its plant was located more than five miles outside the city limits, but on the basis of a finding by the health officer that its plant, facilities, and sources of milk supply failed to satisfy the sanitary standards of the ordinance. Although the condition of plaintiff's plant and facilities appeared to be satisfactory at the time of trial, that fact did not deprive the city of its right to insist that the application for a license be made in the manner prescribed by the ordinance, nor did it deprive the city of the right to make its own inspection of plaintiff's plant, facilities, and sources of supply, or of the further right to refuse a license if it found that plaintiff's sanitary standards did not meet the requirements of the ordinance. In other words, plaintiff's application to the city clerk for a license might have been refused on some ground other than that its plant was located more than five miles outside the city limits. Had it been refused a license on the ground that its plant, facilities or sources of milk supply did not meet the requirements of the ordinance, no constitutional question would arise. To hold that plaintiff should have filed its application and given the city an opportunity to make its inspection in the manner prescribed by the ordinance is not to require a futile or a useless act, because the refusal of the license, after a proper application,

would bring into focus the basis of the refusal; that is, whether the license was refused because of the limitations of section 13 or because plaintiff's plant, facilities, and sources of supply did not meet the sanitary requirements of the ordinance or because of other legitimate grounds. Had the city clerk refused the application for a .license on the ground that plaintiff's plant was located more than five miles outside the city limits, then the question as to the constitutionality of section 13 would have ripened into an actual controversy. On the other hand, the basis of such refusal might well have been one to which there could be no constitutional objection. This court cannot speculate or conjecture on what the city clerk would have done if he and the city health officer had been given the opportunity to act upon plaintiff's application.

■ As the city clerk did not refuse to issue a milk license to plaintiff because of the five-mile restriction provided in section 13 of the ordinance, the question of the constitutionality of that section had not ripened into an actual controversy at the time this suit was begun. In short, plaintiff asks that section 13 of the. ordinance, as applied to it, be declared unconstitutional, but there is no showing that this section has ever been applied to it. Until it has made application to the city clerk for a license and the city has been given the opportunity to make the sanitary inspection prescribed in the ordinance and has refused plaintiff a license on the ground that its pasteurization plant is located more than five miles outside the city limits as provided in section 13, it can claim no invasion of its constitutional rights. It is not entitled to raise the constitutionality of section 13 merely as an abstract question.

Other courts have considered the question of whether or not an aggrieved party may attack the constitutionality of a licensing ordinance without first making proper application for a license. In Gundling v. Chicago, 177 U.S. 183, 20 S.Ct. 633, 44 L.Ed. 725, plaintiff in error challenged the validity of an ordinance of the city of Chicago, which prohibited the sale of cigarettes by any person without a license. Under the terms of the ordinance, licenses were issued by the mayor upon recommendation of the commissioner of health. Plaintiff in error had not made application for a license. In this regard, the court stated in 177 U.S. at page 186, 20 S.Ct. at page 635, 44 L.Ed. 725:

"It seems somewhat doubtful whether the plaintiff in error is in a position to raise the question of the invalidity of the ordinance because of the alleged arbitrary power of the mayor to grant or refuse it. He made no application for a license, and of course the mayor has not refused it. Non constat, that he would have refused it if application had been made by the plaintiff in error. Whether the discretion of the mayor is arbitrary or not would seem to be unimportant to the plaintiff in error so long as he made no application for the exercise of that discretion in his favor and was not refused a license."

The case of Lehon v. City of Atlanta, 242 U.S. 53, 37 S.Ct. 70, 61 L.Ed. 145, involved the constitutionality of certain ordinances of the city of Atlanta, which subjected the business of private detectives and detective agencies to police supervision and provided that no person could carry on such a business without first obtaining recommendation by the board of police commissioners, taking a prescribed oath, and posting a designated bond. Plaintiff in error, a nonresident, urged that the ordinances were unconstitutional because the local officials had construed them so as to refuse applications of nonresidents. The court said, in 242 U.S. pages 55, 56, 37 S.Ct. at page 72, 61 L.Ed. 145:

"Plaintiff in error, however, admits he made no effort to comply with the ordinances. The court of appeals, therefore, was of opinion that, whether certain sections of the Penal Code of the state did or did not exclude citizens of other states from engaging as private detectives, plaintiff in error was deprived of no constitutional right, for 'as to him the ordinances were never construed at all.' In other words, that he had not asserted a right, and in the absence of assertion could not have it judicially passed upon. We concur in the ruling. It is within the principle of Gundling v. Chicago, 177 U.S. 183, 20 S.Ct. 633, 44 L.Ed. 725. To complain of a ruling, one must be made the victim of it. One cannot invoke to defeat a law an appre-

 

hension of what might be done under it and, which if done, might not receive judicial approval."

In Lang's Creamery, Inc., v. City of Niagara Falls, 251 N.Y. 343, 167 N.E. 464, plaintiff challenged the validity of a milk ordinance of the city of Niagara Falls as an unreasonable exercise of the city's police power. The ordinance provided that "no milk or cream shall be sold or offered for sale as 'pasteurized' milk or cream unless the same shall have been 'pasteurized' within the limits of Niagara Falls." Plaintiff's pasteurization plant was located in the city of Buffalo, but it desired to sell its products in the city of Niagara Falls. It had not applied for a license to sell milk in Niagara Falls because it had been informed by the city officials that the ordinance would be enforced against it. The court said, in 251 N.Y. at page 346, 167 N.E. at page 465:

"However, on the facts as found by the Appellate Division, which are sustained by the evidence for the defendants, and in some respects not denied by the plaintiff, the plaintiff is not in a position to question the validity of the ordinance in this action. It should apply to the local authorities for a license or permit to sell its milk products. If such application is unreasonably refused, it would then have a remedy through mandamus to right the wrong that it has suffered. * * * In such proceedings the validity of the ordinance would be subject to attack. If, however, on such an application, it did not appear that its pasteurization plant was properly conducted and its sources of milk supply were sanitary, the license might reasonably be refused without regard to the validity of the ordinance.

"Plaintiff is now in the position of one who seeks a determination that a statute is unconstitutional without showing that his rights are affected thereby. * * * It has no standing in court to raise the question until it establishes that it is directly affected by the enforcement of the ordinance."

The court is aware that the case of Van Gammeren v. City of Fresno, 51 Cal.App. 2d 235, 124 P.2d 621, appears to be contra to the foregoing authorities. However, the court cannot agree with the reasoning and conclusion reached in the Van Gammeren Case and is convinced that the foregoing authorities are well reasoned and express sound judicial policy.

A court should not undertake to determine the constitutionality of a municipal ordinance until the ordinance, as actually applied to a litigant, infringes his constitutional rights. In the present case there is no showing that plaintiff was refused a milk license by the city clerk because of the restrictive provisions of section 13 of the milk ordinance. Until it has made application in accordance with the provisions of the ordinance and has been refused a license on the ground that its pasteurization plant is located more than five miles outside the city limits, as provided in section 13 of the ordinance, it cannot claim an invasion of its constitutional rights. Plaintiff seeks to anticipate the question of the constitutionality of section 13 of the milk ordinance and secure an adjudication before that question has crystallized into an "actual controversy."

The court concludes that the present case does not present an "actual controversy" between the parties within the meaning of that term as used in the Federal Declaratory Judgments Act. In view of this conclusion other questions presented do not require determination.

Judgment will be entered in favor of defendants, dismissing the complaint.